**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

3LIONS PUBLISHING, INC.,

        Plaintiff,                    **Case No:  8:14-CV-01707-MSS-TBM**

        v.                          **DISPOSITIVE MOTION**

JUNIPER NETWORKS, INC.,

        Defendant.

_____/

**JUNIPER NETWORKS, INC.'S MOTION FOR SUMMARY**
**JUDGMENT ON PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIMS**
**AND SUPPORTING MEMORANDUM OF LAW**

        Pursuant to Fed. R. Civ. P. 56 and Local Rule 3.01, Defendant Juniper Networks, Inc., respectfully moves the Court for summary judgment on Plaintiff 3Lions Publishing, Inc.'s claims of copyright infringement, contributory infringement, and willful infringement.  Alternatively, Juniper moves the Court for partial summary judgment on each of these.

**MEMORANDUM OF LAW**

**PRELIMINARY STATEMENT**

        Plaintiff allegedly created a 100,000+ word website, Hipaasurvivalguide.com (the "Work"), which describes an act of Congress known as the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").  Plaintiff uses this Work to market and sell its products and services, all of which relate to HIPAA compliance.  The information on Plaintiff's website, which is factual in nature, is publicly available without any fee or charge.  Kagan Decl. ¶ 5, Exh. D, Responses 41-42.

3435863

Defendant Juniper Networks, Inc. develops and designs high-performance networking products and services. Juniper sells internet routers (devices that move data along the internet) and network security products (firewalls and other products that protect the privacy of computer networks and data traveling across the internet). Juniper does not compete in the market for HIPAA-related services. Juniper's networking and security products, however, can be used to transmit personal HIPAA-protected data, as they utilize sophisticated data security technologies. In 2010, Juniper hired a third party to prepare a "White Paper" highlighting Juniper's HIPAA-compliant products. The gravamen of Plaintiff's action is that the introductory, factual summary of HIPAA in the White Paper violates Plaintiff's copyright in the Work because it too provides a general summary of HIPAA. Specifically, Plaintiff claims that a total of 212 words from the White Paper's description of HIPAA infringe its copyright in the 100,000+ word Hippaasurvivalguide.com.

Each of Plaintiff's claims fail as a matter of law. As the Supreme Court has explained, copyright law protects only creative expression, not compilations of facts. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991). Indeed, the Supreme Court has expressly authorized the wholesale, direct copying of facts, even when such copying also includes elements of original expression. *Id*. at 344 (holding no copyrightability of facts even when combined with minimal non-factual information). Unlike the plaintiff in *Feist*, however, Plaintiff here does not even ***allege*** that Juniper engaged in any wholesale copying—rather, it alleges only that Juniper copied a ***total*** of 212 words comprising factual statements about HIPAA. Thus, even were there evidence of actual copying, Plaintiff's claims would fail because Plaintiff cannot copyright facts or

MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW I/S/O MOTION

compilations of facts about HIPAA as a matter of law, much less demonstrate that there has been more than *de minimis* copying, as required to establish "substantial similarity" under copyright law.[1]

Moreover, even were Plaintiff able to establish copyright protection in its 212 words, Plaintiff's claims for contributory infringement and willfulness still fail because Plaintiff simply has no evidence demonstrating either the knowledge or intent necessary for these claims to survive summary judgment.

## STATEMENT OF FACTS

Plaintiff provides a subscription service that assists customers in complying with HIPAA regulations.  Plaintiff advertises this service through its website, which also contains (non-subscription) factual resources related to HIPAA, including statutory texts, and information, solutions, and guidance regarding the implementation of HIPAA safeguards.  Kagan Decl. ¶ 3, Exh. B, Response 1.  In its own words, 3Lions "is the *de facto* authority for HIPAA information on the internet."  3Lions' MSJ, at 7 [Dkt. 48].

Plaintiff filed the instant action on July 14, 2014, accusing Juniper of copyright infringement and contributory copyright infringement and requesting *inter alia* statutory damages for willful infringement.  [Dkt. 1].  Juniper filed its Answer on September 8,

---

[1] Whether the amount of alleged copying is minimal and thus falls below the level required for substantial similarity are questions of law for the Court.  *See Feist*, 499 U.S. at 361 (opining on determinations of copying and substantial similarity).  Indeed, courts in this circuit routinely make such determinations.  *See, e.g., Lil' Joe Wein Music, Inc. v. Jackson*, 245 Fed. Appx. 873, 875, 880 (11th Cir. 2007) (affirming summary judgment finding of no substantial similarity under the *de minimis* doctrine); *Saregama India Ltd. v. Mosley*, 687 F. Supp. 2d 1325, 1327, 1337-41 (S.D. Fla. 2009) (granting summary judgment of no substantial similarity in that "aside from the … snippet sampled from [Plaintiff's] sound recording, the two works bear no similarities and no jury, properly instructed, could find that the songs are substantially similar"), *aff'd on other grounds*, 635 F.3d 1284 (11th Cir. 2011).

MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW I/S/O MOTION

2014, denying both counts of infringement and the allegations of willfulness, as well as setting forth affirmative defenses.  [Dkt. 12].

Plaintiff alleges a copyright in its Work through an assignment from its purported authors, Carlos Leyva, Deborah Leyva and Wade Pinder.  Plaintiff claims a registration for the Work as it existed on February 16, 2010.  Kagan Decl. ¶ 2, Exh. A.

One page in the Work is entitled "The HITECH Act and HIPAA," which Plaintiff refers to as the "HITECH Act Summary."  This page provides a factual description of the HITECH Act (a HIPAA enforcement statute passed in 2009).  All of Plaintiff's copyright infringement claims stem from this single page within its 100,000+ word website.[2]

Plaintiff alleges that Juniper infringed the Work by publishing its August 2010 White Paper, formally titled "Healthcare and Compliance—The New Reality."  Plaintiff also asserts contributory infringement because two Juniper distributors, NDM Technologies and Insight Direct, USA, allegedly reposted the White Paper on their websites.  Kagan Decl. ¶ 6, Exh. E, Responses 4-5, 7, 9-10; *see also* Compl. ¶ 17 [Dkt. 1].

Juniper used the White Paper to promote its network security products and solutions by describing the level of security embedded in Juniper's products.  Juniper has more than a thousand such marketing documents on its website.  The accused White

---

[2] Plaintiff has limited its claims to the version of the Work submitted to the Copyright Office in 2010 **only**.  Exh. F (3Lions Opp. to MTC [Dkt. 29]), at 3 ("Juniper however, seeks to extend the Appropriate Discovery Period to a point in time that encompasses the creation of dozens of derivative works, none of which are in dispute in the instant case.").  In opposing Defendant's discovery requests and Motion to Compel, Plaintiff expressly disavowed any assertion of copyright infringement as to derivative works —*i.e.* versions of the website that existed after February 16, 2010.  *See id*; Kagan Decl. ¶¶ 4-5, 8-9, Exh. C, Response 11; Exh. D, Responses 41-42, Exh. G, Response 13; Exh. H, at 101:6-102:24.

MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW I/S/O MOTION

Paper was not a success, and Juniper removed it from its public website in 2013.  During the entire time the White Paper was available on Juniper's website, it was viewed a total of 31 times.

## ARGUMENT

### I.     Standard for Summary Judgment

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Moore v. Reese*, 637 F.3d 1220, 1231-32 (11th Cir. 2011).  The moving party "bears the initial burden of showing that there is an absence of a genuine issue of material fact[.]"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the "moving party meets this burden, the non-moving party must . . . set forth specific facts showing that there is a genuine issue for trial, not merely make a summary denial of the movant's allegations."  *Adkins v. Cagle Foods*, 411 F.3d 1320, 1324 (11th Cir. 2005); *see also* Fed. R. Civ. P. 56(e).

"If the non-moving party fails to 'make a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' then the court must enter summary judgment for the moving party."  *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001) (quoting *Celotex*, 477 U.S. at 323, 325).  "[T]he moving party need not 'support its motion with affidavits or other similar material negating the opponent's claim.'"  *Id*.  "Instead, the moving party simply may 'show[]—that is[], point out to the district court—that there is an absence of evidence to support the nonmoving party's case.'"  *Id*.  "[T]he plaintiff must [then] present affirmative evidence . . . to defeat

a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Summary judgment is particularly appropriate against a plaintiff who lacks affirmative evidence due to its failure to conduct adequate discovery. *See Ojeda v. Louisville Ladder, Inc.*, 410 Fed. Appx. 213, 215 (11th Cir. 2010).

This Court should dismiss each of Plaintiff's claims on summary judgment. First, Plaintiff has failed to demonstrate substantial similarity between the protectable elements of its allegedly infringed Work and Juniper's White Paper. Of the 100,000+ words in the Work, Plaintiff alleges that only 212 words were copied in Juniper's White Paper. Moreover, many of the words and phrases upon which Plaintiff bases its claims are factual statements about HIPAA—facts that are not subject to copyright protection as a matter of law. When these non-copyrightable elements are stripped from Plaintiff's claims, it becomes even more apparent that there is no substantial similarity between the White Paper and Plaintiff's Work. Because of the minimal amount of copying Plaintiff alleges, even if there were evidence of substantial similarity, Juniper would be protected by the fair use doctrine. Second, independent of Plaintiff's inability to establish **direct** infringement, Plaintiff can establish neither the knowledge of infringement nor intentional inducement required for **contributory** infringement. Third, Plaintiff cannot prove the willfulness required for contributory infringement and heightened statutory damages. There is simply no evidence to support its willfulness assertions.

## II.    Plaintiff Cannot Support its Claim for Copyright Infringement

### A.    Plaintiff cannot prove infringement.

"To establish copyright infringement, a plaintiff must prove (1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original."

*Feist*, 499 U.S. at 361; *Baby Buddies, Inc. v. Toys "R" Us, Inc.*, 611 F.3d 1308, 1315 (11th Cir. 2010). "Not all copying [] is copyright infringement." *Feist,* 499 U.S. at 361. The elements or portions of a copyrighted work that are copied must themselves be original to create an actionable right against copying. *See id.*

"To establish copying, [Plaintiff] must show that [. . . Defendant's material] is so substantially similar to [Plaintiff's] that an average lay observer would recognize the alleged copy as having been appropriated from the original work." *Calhoun v. Lillenas Publ'g,* 298 F.3d 1228, 1232 (11th Cir. 2002); *see also Baby Buddies*, 611 F.3d at 1315.

The court "must apply the substantial similarity test to only those elements of the copyrighted work that are actually subject to copyright protection—that is, elements of original expression in the copyrighted work." *Baby Buddies*, 611 F.3d at 1316; *Herzog v. Castle Rock Entm't*, 193 F. 3d 1241, 1248 (11th Cir. 1999). To demonstrate substantial similarity, a plaintiff must establish that (1) the allegedly infringed content is itself copyrightable; (2) legal similarity exists between the allegedly infringed and infringing works; and (3) the alleged copying is of a material, non-*de minimis* nature. *See id.*

1. Plaintiff's Work is afforded minimal copyright protection at best.

Plaintiff cannot establish copyright protection in the allegedly infringed portions of its Work. Many of the specific words and phrases Plaintiff alleges to have been infringed are merely its own recitation of facts taken from an official U.S. government website describing HIPAA. *See* Exh. J (Dept. of Health & Human Svs., HITECH Act Enforcement Interim Final Rule, http://www.hhs.gov/ocr/privacy/hipaa/administrative/ enforcementrule/hitechenforcementifr.html (2009)); Federal Register, http://www.hhs. gov/ocr/privacy/hipaa/administrative/enforcementrule/enfifr.pdf. Plaintiff can advance

MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW I/S/O MOTION

no claim of copyright ownership over material not original to it.  *See, e.g., Feist*, 499 U.S. at 345 ("a work must be original to the author").  Moreover, these materials stand wholly outside copyright protection as works of the U.S. government.  *See* 17 U.S.C. § 105.

Much of the material Plaintiff alleges to be infringed consists of facts, restatements of statutory text, short phrases, or statements so simple they are inseparable from the underlying facts they are describing.  At most, compilations and arrangements of facts, such as a summary of the provisions of a statute, may receive "thin" copyright protection if the compilations or arrangements "are sufficiently original" such that they are "made independently by the compiler and entail a minimal degree of creativity[.]"  *Feist*, 499 U.S. at 349, 357.  Works "only deserv[ing] 'thin' protection . . . [are] only protect[ed] against virtually identical copying."  *Progressive Lighting, Inc. v. Lowe's Home Ctrs., Inc.*, 549 Fed. Appx. 913, 920 n.5 (11th Cir. 2013) (citing *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003)).

In *Feist*, the leading case on questions of copyrightability and infringement, the Supreme Court held that copyright protection was unavailable to plaintiff's directory against defendant's identical wholesale copying.  499 U.S. 340-41.  The defendant copied 1,309 listings from plaintiff's work, including four fictitious—and therefore original— listings.  *Id*.  Nevertheless, the work was largely factual.  Small sections of copied material could not be afforded copyright protection as a matter of law.  *Id*. at 363-64.

Here, Plaintiff is similarly trying to claim copyright infringement over factual information, with (at most) a hint of original content sprinkled in.  For example, Plaintiff alleges infringement of a heading that reads "The HITECH Act"—the name of the statute described in the text.  There is nothing original to Plaintiff in that title.  Plaintiff argues

that "The HITECH Act," as a phrase, is not found within American Recovery and

Reinvestment Act.  But Plaintiff fails to explain that the phrase "HITECH Act" is an

acronym *designed by Congress* to refer to the "**H**ealth **I**nformation **T**echnology for

**E**conomic and **C**linical **H**ealth" Act, and that this phrase appears throughout the

Department of Human & Health Services website.  *See, e.g.,* Exh. J (HITECH Act

Enforcement Interim Final Rule, http://www.hhs.gov/ocr/privacy/hipaa/administrative/

enforcementrule/hitechenforcementifr.html).

Plaintiff also alleges infringement of the phrase "case by case" to describe

enforcement of regulations on a case by case basis.  There can be no protection in a short,

factual phrase used to accurately describe the statute.  *See* 37 C.F.R. § 202.1 ("examples

of works not subject to copyright [include] . . . [w]ords and short phrases").  These

examples underscore the implausibility of Plaintiff's claims.  At best, Plaintiff may assert

"thin" copyright protection in its compilation of fact, but not in the facts or phrases

themselves.  *See Feist*, 499 U.S. at 344-51.

2.      Plaintiff cannot establish legal similarity.

A finding of substantial similarity between factual compilations requires

"virtually identical copying."  *Progressive Lighting*, 549 Fed. Appx. at 920 n.5.

Therefore, even were the alleged snippets of Plaintiff's Work subject to copyright

protection, as evincing Plaintiff's "independen[ce]" and "creativity" in highlighting

particular statutory selections, Plaintiff must still demonstrate infringement—*i.e.* identical

copying—of its "thin[ly]" protected work.  Plaintiff cannot satisfy its burden.

Plaintiff's Work and Juniper's White Paper are a far cry from identical.  Plaintiff

only alleges that slightly more than 200 of the White Paper's 5,700+ words and the

MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW I/S/O MOTION

Work's 100,000+ words are similar, and does not even allege "virtual identicality."  *See e.g.*, 3Lions MSJ [Dkt. 48], at 7, 11 (alleging Defendant "paraphrased" 3Lions content). Such a comparison cannot withstand a traditional substantial similarity analysis, let alone the virtual identicality test required for factual compilations.  The Supreme Court and courts in this and other circuits have held that minimal or fragmented verbatim copying cannot support a finding of substantial similarity in large works.  *See Feist*, 499 U.S. at 344 (despite four fictional—*i.e.* original—listings copied by defendant, denying substantial similarity); *Lil' Joe*, 245 Fed. Appx. At 875, 880 (despite literal copying of a central line, denying substantial similarity due to the songs' overall dissimilarities); *Schoolhouse, Inc. v. Anderson*, 275 F.3d 726, 729 (8th Cir 2002) (holding fragmented copying of plaintiff's listings insufficient for a finding of substantial similarity); *Key Publ'ns, Inc. v. Chinatown Today Publ'g Enters., Inc.*, 945 F.2d 509 (2d Cir.1991) (same); *Cincinnati Microwave, Inc. v. Larrick's Inc.*, 1983 U.S. Dist. LEXIS 14772, at *8-9, Case No. 83 C 3352 (N.D. Ill. Aug. 9, 1983) (finding no likelihood of success on the merits or substantial similarity where plaintiff identified thirteen passages—each four to eleven lines long—copied in defendant's work); *Jackson v. Wash. Monthly Co.,* 206 U.S.P.Q. 92, 94 (D.D.C. 1979) (finding no substantial similarity despite verbatim copying of two lines within a larger work), *aff'd*, 675 F.2d 1340 (D.C. Cir. 1982).

As seen in comparisons of Plaintiff's and Defendant's works, both works discuss and heavily rely on text from the HITECH Act itself, but are otherwise dissimilar (almost as dissimilar as possible considering that both are summaries of the same limited facts). *See, e.g., Palmer v. Braun,* 287 F.3d 1325, 1130-31 (11th Cir. 2002) (noting expected similarities between works of similar purpose); *Mount v. Viking Press*, 603 F.2d 213, 213

(2d Cir. 1979) (unpublished) (noting expected similarities and no infringement between works covering similar subjects); *Funkhouser v. Loew's Inc.*, 208 F.2d 185, 188-89 (8th Cir. 1953) (same for works of similar genre).  Those dissimilarities are apparent from the content, wording, format, style, organization, and grammar of the two works.  The following subsections elaborate on these propositions.

      3.      Third party works, predating Plaintiff's registration, undermine Plaintiff's allegation of identical copying.

For many of Plaintiff's allegations of identicality—what Plaintiff describes as "word for word" copying—the sentences at issue are taken directly from the HITECH Act itself, the government's website, or other publicly available works ***predating*** creation of Plaintiff's work.  For example, Plaintiff asserts that Defendant committed copyright infringement by copying: "The Health Information Technology for Economic and Clinical Health Act (HITECH *Act or 'The Act'*) is part of the American Recovery and Reinvestment Act of 2009 (ARRA)."  Exh. I.  The copying is not identical, however, as the italicized words are missing from Juniper's White Paper.  Even more fundamentally, a comparison of Plaintiff's text to the Department of Health & Human Services' website, *see* Exh. J, demonstrates that if anything, Plaintiff copied its purportedly protected expression directly from the Department:

| Plaintiff's Work | HHS Website, http://www.hhs.gov/ ocr/privacy/hipaa/administrative/ enforcementrule/hitechenforcementifr.html |
|---|---|
| The Health Information Technology for Economic and Clinical Health Act (HITECH *Act or 'The Act'*) is part of the American Recovery and Reinvestment Act of 2009 (ARRA). (emphasis added) | The Health Information Technology for Economic and Clinical Health (HITECH) Act, enacted as part of the American Recovery and Reinvestment Act of 2009 (ARRA)[.] |

11

3435863

Plaintiff is effectively claiming that its changing "*enacted as* part of" to "*is* part of" is sufficient to vest Plaintiff with copyright protection **and** demonstrate substantial similarity for copyright infringement.  To the contrary, the evidence shows that Juniper (and, in fact, Plaintiff) lawfully reproduced words of the U.S. government in its descriptions of the HITECH Act.  (The absence of the italicized reference to "Act or 'The Act'" in both Defendant's work and the HHS website underlines that conclusion.)

Next, Plaintiff asserts infringement by the purported copying of:  "the Act provides individuals with a right to obtain their PHI in an electronic format."  Exh. I. However, a comparison of Plaintiff's text both to a website publicly available on March 22, 2009, *see* Exh. K, and to a bulletin published in April 2009, *see* Exh. L—each predating both Plaintiff's copyright and Defendant's works—disproves Plaintiff's assertion:

| Plaintiff's Work | Brunini, Grantham, Grower & Hewes, PLLC, http://www.brunini.com/ assets/attachments/ ARRA.pdf (March 22, 2009) | UCSD Bulletin, http://healthsciences.ucsd.edu/c ompliance/privacy/Documents/ BULLETIN-Privacy% 20Bulletin-Summary%20of% 20the%20HITECH_Privacy% 20Provisions-Apr09.doc, (April 2009) |
|---|---|---|
| [T]he Act provides individuals with a right to obtain their PHI in an electronic format[.] | Under the HITECH Act, individuals are given the right to obtain a copy of their PHI in electronic format. | The HITECH Act now provides individuals with a right to obtain their PHI in electronic format . . . |

As compared to Brunini's work, Plaintiff removed "are given the," and added the words "provides" and "an" to create, what it believes to be, a unique, protectable work.  In

MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW I/S/O MOTION

relation to the UCSD bulletin, Plaintiff removed only the single word "now" and added the pronoun "an."

The two unprotectable phrases set forth in the tables above by themselves constitute a full 20 percent of the allegedly copied portions of Plaintiff's Work; they amount to 25 percent of Defendant's alleged verbatim copying. Once stand-alone words and phrases, including "the HITECH Act," "significant taxpayer dollars" and "transparency and accountability" are removed, the percentage of facially noncopyrightable or not copied content becomes even more preponderant. Plaintiff cannot demonstrate substantial similarity for these elements.

4. Plaintiff cannot establish that the copying was substantial—*i.e.* of a material and non-*de minimis* nature.

Any copying—even were it otherwise substantial in layman's terms—is protected from infringement liability if the "amount of material copied is *de minimis*," thereby effectively nullifying any "finding of substantial similarity." *MiTek Holdings v. Arce Eng'g Co.*, 89 F.3d 1548, 1560 (11th Cir. 1996). "Even in the rare case of a plaintiff with direct evidence that a defendant attempted to appropriate his original expression, there is no infringement unless the defendant succeeded to a meaningful degree." *Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1214 (11th Cir. 2000) (citations omitted); *see also Bissoon-Dath v. Sony Computer Entm't Am., Inc.*, 694 F. Supp. 2d 1071, 1082 (N.D. Cal. 2010) (finding no infringement because, after filtering out unprotected elements, "the stories' plots are similar only at a level of abstraction that is barely meaningful, if at all"), *aff'd*, 653 F.3d 898 (9th Cir. 2011).

3435863

The amount of copied content relative to the total size of the work plays a key role in establishing substantial similarity. *Lil' Joe*, 245 Fed. Appx. at 880 (copying is *de minimis* where "the disputed phrase, although prominently placed . . . represents only approximately eleven seconds of a three-minute, thirteen-second song"); *Schoolhouse*, 275 F.3d at 729 (noting that small percentage of copied text relative to overall work precluded a finding of infringement); *Key Publ'ns*, 945 F.2d 509 (same).

In *Lil' Joe*, this circuit rejected plaintiff's claim of copyright infringement even though defendant actually copied plaintiff's work because the copied material was insignificant relative to the total work. 245 Fed. Appx. at 880. Following *Feist*, the court focused on substantial similarity in the context of the works as a whole, rather than narrowing in on individual elements of the works. *See id.*

Therefore, even if factual copying were shown in this case, that copying cannot rise to the level of actionable infringement unless the copied portion amounted to a significant part of the Work, namely Plaintiff's website comprising over 100,000 words. *See id.* The "burden is on the copyright owner to demonstrate the significance of the copied features . . ." *MiTek*, 89 F.3d at 1560.

In this case, Plaintiff infringement allegations over a mere 212 words amounts to about one-fifth of one percent of the Work. Once words and phrases identical to government materials or other sources pre-dating Plaintiff's creation are removed, the percentage falls to less than one-seventh of one percent. Therefore, even were Defendant to have copied snippets from Plaintiff's work, Plaintiff cannot establish that such copying renders the two works ***substantially similar*** as a matter of law.

MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW I/S/O MOTION

3435863

## III.  Defenses to Copyright Infringement

Because the alleged copying is *de minimis* in amount and type, Juniper is entitled to summary judgment on two additional grounds:  the merger doctrine and fair use.

### A.  Defendant's alleged use is protected by the merger doctrine.

If there are very few ways in which an idea can be expressed, expression and idea are said to "merge," and the expression is not protected.  *See Palmer*, 287 F.3d at 1330. Identical verbiage—let alone paraphrasing—does not constitute infringement when said verbiage merges with an idea or fact.  "The merger doctrine denies copyright protection when an idea and its expression are so closely connected that there is only one way to express the idea."  *PortionPac Chem. Corp. v. Sanitech Sys., Inc.*, 217 F. Supp. 2d 1238, 1245 (M.D. Fla. 2002); *see also BellSouth Adver. & Publ'g Corp. v. Donnelley Info. Publ'g, Inc.*, 999 F.2d 1436, 1442-44 (11th Cir. 1993) (An "expression is not protected in those instances where there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself."). Unlike fanciful works, recitations of facts or descriptions of another's content are limited in presentation.  *See PortionPac Chem.*, 217 F. Supp. 2d at 1247 ("[T]he Court finds that these are not protectable elements . . . The Court is at a loss in trying to invent any other instructions, words, or phrases [to provide the same instruction]."); *see also Baby Buddies*, 611 F.3d at 1317 (citing 17 U.S.C. § 102(b)).

The very first sentence for which Plaintiff claims copyright infringement demonstrates why the merger doctrine bars its claims.  Plaintiff argues that it is entitled to a copyright in the phrase:  "The Health Information Technology for Economic and Clinical Health Act (HITECH Act or 'The Act') is part of the American Recovery and

Reinvestment Act of 2009 (ARRA)." Even putting aside that this sentence is virtually identical to content on the Department of Human & Health Services website, there is no other practical way to convey this fact. Indeed, Plaintiff's "Summary" of HIPAA is just that—a factual description of a federal law. Plaintiff cannot, therefore, use copyright law to prevent others from providing a similar summary, even when those summaries use some of the same words or phrases that Plaintiff uses.

> **B.      Juniper's White Paper is protected as fair use.**

Juniper is also protected from Plaintiff's claims by the doctrine of "fair use." The Copyright Act states that "the fair use of a copyrighted work . . . is not an infringement of copyright." 17 U.S.C. § 107. The fair use doctrine "permits [and requires] courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Campbell v. Acuff-Rose Music*, 510 U.S. 569, 577 (1994) (alteration in original) (quoting *Stewart v. Abend*, 495 U.S. 207, 236 (1990)). "In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include[:] (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." *Id*. Here, all four fair use factors support Juniper.

MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW I/S/O MOTION

1.      **The purpose and character of the use supports a finding of fair use.**

The first fair use factor, the purpose and character of the use, is frequently considered in terms of "transformativity."  "A transformative work is one that 'adds something new, with a further purpose or different character, altering the first [work] with new expression, meaning or message.'"  *Peter Letterese & Assocs. v. World Inst. of Scientology Enters.*, 533 F.3d 1287, 1310 (11th Cir. 2008).  A use of copyrighted material is not transformative if it "merely supersede[s] the objects of the original creation."  *Id.* (alteration in original).

Additionally, the purpose and character prong focuses on the commercial or noncommercial nature of the defendant's work.  Noncommercial use does not require use wholly disconnected from commercial activities, but rather only that the work itself not be directly, monetarily exploited.  *See Bollea v. Gawker Media, LLC*, 913 F. Supp. 2d 1325, 1328 (M.D. Fla. 2012).  "The mere fact that the posting of excerpts of a copyrighted work would increase traffic to a website and, correspondingly, advertising revenue, standing alone is insufficient to demonstrate a commercial use that would preclude a finding of fair use under copyright law."  *Id.*  "As this Court previously noted: 'It is true that Defendants stand to indirectly profit from the posting of the Video excerpts to the extent it drives additional traffic to Defendants' website[;]  This is true, however, with respect to any information posted online by any media outlet and is distinguishable from *selling* access to the Video solely for the purpose of commercial gain.'"  *Id.* (emphasis in original).

The purpose of Plaintiff's website is to advise readers about healthcare laws and regulations, potentially driving customers to Plaintiff's subscription-based HIPAA services.  In contrast, Juniper's White Paper arises out of the entirely different purpose of marketing Juniper products and solutions.  The White Paper is marketing literature for security products and services that are not specific to HIPAA.  Even were the White Paper to be helpful as advertisement, that use does not fall within the ambit of "commercial use."  *See Bollea*, 913 F. Supp. 2d at 1328.  Defendant did not sell access to its White Paper or its allegedly infringing context.  *See id.*  Non-monetized materials that may stimulate product demand are not rendered commercial solely by their facilitative role.  *See Consumers Union of U.S., Inc. v. General Signal Corp.*, 724 F.2d 1044, 1049 (2d. Cir. 1983) (finding copying conducive to a finding of fair use because "an advertiser may copy some excerpts from a copyrighted work for the purpose of having the content of the work advance his commercial interests [when] the purpose is to report factual information"); *see also Sega Enters. v. Accolade, Inc.*, 977 F.2d 1510, 1522 (9th Cir. 1992) (noting that the "commercial nature of a use is a matter of degree, not an absolute" and finding that use, other than the sale of a copied work, is at most indirectly commercial).

### 2.    Plaintiff's work is factual in nature.

"[T]he nature of the copyrighted work[] recognizes that there is a hierarchy of copyright protection in which original, creative works are afforded greater protection than derivative works or factual compilations."  *SunTrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1271 (11th Cir. 2001).  "[F]air use is more likely to be found in factual works

MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW I/S/O MOTION

than in fictional works." *Stewart*, 495 U.S. at 237 (citing NIMMER ON COPYRIGHT § 13.05[A]).

Plaintiff asserts copyright infringement of purely factual works—a summary of the HITECH Act. Plaintiff's claim is further weakened because its Work is a compilation of facts rather than a creative or fictional work, and was dictated by a publically available statutory text. Copyright law affords Plaintiff's Work only thin—if any—copyright protection, weighing heavily in favor of a finding of fair use.

### 3. The quantity and value of Defendant's alleged use is insubstantial in relation to the copyrighted work as a whole.

Fair use protection is proper where "the quantity and value of the materials used" are reasonable in relation to the scope of the work as a whole. *Campbell*, 510 U.S. at 586 (quoting *Folsom v. Marsh*, 9 F. Cas. 342, 348 (C.C.D. Mass. 1841)).

Even were all 212 words highlighted by Plaintiff assumed to be copied and to reflect its protected expression, that total would still constitute only a tiny portion of the Work. The indicated material consists of just a few scattered words and sentences, compared to the 100,000+ word website that Plaintiff registered for protection with the Copyright Office. Moreover, once the explicitly noncopyrightable portions—namely words and phrases directly copied from the HITECH Act, ARRA, and the Department of Human & Health Services website —are removed, any alleged copying becomes even more negligible.

3435863

### 4.      Defendant's alleged use did not adversely affect the potential market or value of Plaintiff's Work.

A fair use defense focuses on the "degree to which the defendant's use adversely affects the potential market or value of either the original work or derivative works." *Peter Letterese*, 533 F.3d at 1315.  "The less adverse effect that an alleged infringing use has on the copyright owner's expectation of gain, the less public benefit need be shown to justify the use."  *MCA, Inc. v. Wilson*, 677 F.2d 180, 183 (2d Cir. 1981).

Plaintiff has not demonstrated any injury to the market or value of its Work. Plaintiff stated that it does not value its Work in monetary terms and refused to provide discovery or evidence of any alleged damage, thereby precluding any assertion of injury to the Work's market or value.  Exh. F (3Lions Opp. to MTC [Dkt. 29]), at 5 (declining to respond to Juniper's request for revenue "attributable to the Work" on the basis that Plaintiff did not possess the copyright at the time of infringement and had no monetary damages), 6 ("The revenues that Juniper seeks from 3Lions related to 'product or services' are revenues from derivative works and therefore not relevant.").  Plaintiff has admitted, both in its response to Juniper's Motion to Compel and under oath, that it has not suffered any actual economic harm.  *Id.*; Kagan Decl. ¶ 9, Exh. H, at 46:21-47:2, 86:8-87:4 (stating Plaintiff never defined its market in financial terms nor conducted any prospective market size or market share studies).  Plaintiff rejected any determination or calculation of the value of its allegedly infringed work in monetary terms.  *Id.*  Plaintiff is unable to point to any profit gained by Defendant from the allegedly infringing conduct and has not retained an expert to calculate damages or provide testimony as to what a reasonable royalty measure of damages would have been.

Further, even if a market could be shown for the Work, the White Paper would have no effect on that market.  The White Paper constitutes mere marketing material, which cannot serve the function of a reference work like Plaintiff's website.  An individual looking for advice about healthcare laws could not turn to marketing material in order to learn about the enactment in question.  In any event, the White Paper was only viewed a total of 31 times by visitors to Juniper's website.  Even were the White Paper treated as a substitute for the Work, such a minute number of substitutions would have a negligible impact on any market for the Work.

## IV.     Plaintiff cannot prove contributory infringement.

Assuming direct infringement, contributory infringement may be found when "[o]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another."  *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996); *see also MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S.913, 929 (2005).  "One commits contributory copyright infringement by intentionally inducing or encouraging direct infringement."  *Countryman Nev., LLC v. Adams*, 2015 U.S. Dist. LEXIS 16612, at *12-13, Case No. 6:14-cv-491-Orl-18GJK (M.D. Fla. Jan, 16, 2015) (citing *Grokster*, 545 U.S. at 930).  Contributory infringement requires a finding of (1) direct infringement; and (2) knowledge of or intent to induce or encourage infringement.  *See id.*

Although Plaintiff bears the burden of proof to establish contributory infringement, it has adduced no evidence as to any of the necessary elements required in making this claim.  Unless Plaintiff can present specific evidence, "on [this] essential

element of [its] case with respect to which [it] has the burden of proof, [] the court must enter summary judgment for the [Defendant]." *Denney*, 247 F.3d at 1181.

A.   **Plaintiff cannot assert contributory infringement when it has failed to demonstrate direct infringement.**

There can be no contributory infringement without direct infringement. Contributory infringement is defined as "with knowledge of the infringing activity, induc[ing], caus[ing] or materially contribut[ing] to the infringing conduct of another." *Cable/Home Commc'n Corp. v Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990). Actual infringement is essential to the analysis. *See id*. ("Contributory infringement necessarily must follow a finding of direct infringement.").

In the second count of its Complaint, Plaintiff accuses Juniper of contributory copyright infringement. This claim is based entirely on the fact that Plaintiff found copies of Juniper's White Paper posted on third-party websites. Kagan Decl. ¶ 6, Exh. E, Responses 4-5, 7, 9-10; *see also* Compl. ¶ 17 [Dkt. 1]; 3Lions MSJ. [Dkt. 48], at 6-7.

As an initial matter, because the White Paper does not infringe directly, it cannot form the basis for any claim of contributory infringement. Even if there were direct infringement here, however (a proposition that has been debunked above), Plaintiff would still be required to present evidence that Juniper did something to cause its partners to repost the White Paper on their sites. Plaintiff has not adduced any such evidence in this case, providing another, independent reason why its claim of contributory infringement must fail. Kagan Decl. ¶ 6, Exh. E, Responses 5-9.

**B.     Plaintiff cannot demonstrate Defendant's knowledge of or intent to induce any infringement.**

In contrast to a claim for *direct* infringement, a claim for *contributory* infringement necessitates evidence demonstrating Defendant's knowledge of the subject infringement and intent to induce.  *See Cable/Home Commc'n*, 902 F.2d at 845. "Contributory copyright infringement refers to the intentional inducement, causation or material contribution to another's infringing conduct."  *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1138 n.19 (11th Cir. 2007) (citations omitted).  "The standard of knowledge is objective" and must predate the act of infringement.  *See Casella v. Morris*, 820 F.2d 362, 365 (11th Cir. 1987) (highlighting the fact the contributory infringement "occurred one month *after* [defendant] received the mandatory cease-and-desist letter") (emphasis in original).

Plaintiff has not presented and cannot present any facts to support the element of "knowledge of the infringing activity" or "intentional inducement."  First, Plaintiff alleges that Defendant had knowledge of the infringing activity ***after*** being informed by Plaintiff that the allegedly infringing White Paper was ***already available*** on third-party sites.  Comp. ¶¶ 17, 26 [Dkt.1].  Plainly, such an after-the-fact appraisal cannot satisfy the requirement that the subject infringement was caused "knowingly."  Plaintiff cannot assert that Juniper had knowledge of any infringing activity at the time the White Paper was produced nor can Plaintiff assert that Juniper had knowledge at the time it was posted on its partner site.  Juniper did not author the allegedly infringing White Paper; rather it was created by a third party contractor.  Kagan Decl. ¶ 6, Exh. E, Response 4. Juniper neither had knowledge of the process by which the White Paper was written nor

MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW I/S/O MOTION

would it have any reason to suspect any infringement when commissioning the creation of factual, marketing literature.  *See id.*

Second, Juniper was not aware that the White Paper contained allegedly infringing content.  Juniper was also not aware that any of its affiliates had reposted the White Paper to their own websites.  Kagan Decl. ¶ 6, Exh. E, Responses 4-9. Accordingly, Juniper could not have intended to induce any act of infringement.

Because Plaintiff cannot establish actual infringement, intent to induce infringement by another, or knowledge of infringing activity, Plaintiff's claim for contributory infringement fails.

## V.  Plaintiff cannot prove willful infringement.

Even assuming direct infringement, to establish a claim for *willful* infringement, a plaintiff must establish that defendant acted "despite an objectively high likelihood that its actions constituted infringement" and "demonstrate that this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer."  *Olem Shoe Corp. v. Wash. Shoe Corp.*, 591 Fed. Appx. 873, 877-88 (11th Cir. 2015) (adopting patent law's standard of willfulness); *see also Cable/Home Commc'n.*, 902 F.2d 829 (requiring actual knowledge of copyright).

Plaintiff has not advanced *any* evidence demonstrating or supporting a finding of willful infringement.  Defendant did not author the accused White Paper.  Kagan Decl. ¶ 6, Exh. E, Response 4.  Plaintiff failed to propound any discovery on the third party who did author the White Paper.  There is no indication that Juniper was aware—or should have been aware—that a White Paper it commissioned would (allegedly) use the

wording, phraseology, or content of another publication.  Any assertion of, or claim based on, willful infringement must therefore be dismissed.

## VI.    Conclusion

Plaintiff has utterly failed to adduce any evidence of Juniper's direct or indirect copyright infringement.  At this point, Plaintiff's claims have been whittled down to a mere 212 words in a 100,000+ word Work.  Of these few remaining words, moreover, Juniper has demonstrated that many of them are either:  (1) factual in nature (and thus not subject to copyright protection); or (2) taken from government or other third-party sources.  To the extent anything remains of Plaintiff's allegations, such remnants are clearly *de minimis* and unable to survive the legal test for "substantial similarity."

Plaintiff has also failed to present any evidence demonstrating Defendant's knowledge of, or intent to induce, infringement.  These failures obliterate Plaintiff's claim of contributory infringement, as well as its claim of willful infringement.

For these reasons, Juniper respectfully requests that this Court grant its Motion for Summary Judgment.

Date: June 15, 2015                           Respectfully submitted,

                                              /s/ David Nimmer
                                              DAVID NIMMER
                                              Admitted Pro Hac Vice
                                              IRELL & MANELLA LLP
                                              1800 Avenue of the Stars, Suite 900
                                              Los Angeles, CA 90067
                                              Telephone: (310) 277-1010
                                              Fax: (310) 203-7199
                                              E-mail: dnimmer@irell.com

                                              *Attorney for Defendant Juniper Networks, Inc.*

MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW I/S/O MOTION

3435863

## <u>CERTIFICATE OF SERVICE</u>

**WE HEREBY CERTIFY** that on June 15, 2015, a true and correct copy of

Juniper Networks, Inc.'s Motion for Summary Judgment on Plaintiff's Copyright

Infringement Claims and Supporting Memorandum of Law was served electronically on

counsel of record for the Plaintiff.

/s/ David Nimmer
DAVID NIMMER
Admitted Pro Hac Vice

*Attorney for Defendant Juniper Networks, Inc.*

3435863