**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

3LIONS PUBLISHING, INC.,

               Plaintiff,                              **Case No:  8:14-CV-01707-MSS-TBM**

               v.

JUNIPER NETWORKS, INC.,

               Defendant.

_____/

**JUNIPER NETWORKS, INC.'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [Dkt. 48]**

Juniper Networks, Inc. files this Memorandum of Law in Opposition to Plaintiff

3Lions Publishing, Inc.'s Motion for Summary Judgment (Plaintiff's "Motion" or "MSJ")

in accordance with paragraph 2(H)(1) of the October 15, 2014 Case Management and

Scheduling Order.  [Dkt. 21].  As set forth in more detail in Juniper's co-pending Motion

for Summary Judgment, [Dkt. 49], Plaintiff's claims of copyright, contributory and

willful infringement must be denied as a matter of law and lack of evidence.

**MEMORANDUM OF LAW**

**PRELIMINARY STATEMENT**

Plaintiff has registered protection with the Copyright Office in its 100,000+ word

website Hipaasurvivalguide.com (the "Work"), first published on February 1, 2010.  The

Work describes an Act of Congress known as the Health Insurance Portability and

Accountability Act of 1996 ("HIPAA").  Plaintiff's Motion seeks summary judgment for

infringement of its Work, based exclusively on a few hundred words it claims were

copied or paraphrased.

3441917

## RESPONSE TO PLAINTIFF'S "UNDISPUTED FACTS"

Plaintiff's Motion begins with a section entitled "Statement of Undisputed Facts." 3Lions MSJ at 5–8.  However, contrary to Plaintiff's characterization, many of these "facts" are disputed, some are downright false, and others merely state legal conclusions. After Plaintiff submitted its "facts," and pursuant to this Court's October 15, 2014 Order, the Parties have now—concurrently with this Opposition—filed a Stipulation of Agreed Material Facts ("Stipulation").  To the extent Plaintiff attempts to rely on "facts" outside the Stipulation, those facts are either disputed or are legal conclusions.  For example, Juniper disputes all of Plaintiff's "facts" that presume infringement, such as "FACTS" ¶¶ 4, 5, 9, 11, 13, 15, and 20.  *See, e.g.,* 3Lions MSJ, "FACT" ¶ 4 ("Juniper infringed upon 3Lions' copyright.").  Similarly "FACTS" ¶¶ 5, 9, and 11 presume both that (1) the White Paper infringed and (2) Juniper distributed it to NDM and Insight, thus combining a legal conclusion with an unproven assertion.  "FACTS" ¶¶ 13 and 15 (statements that (1) Juniper copied from 3Lions and (2) that Juniper's content could *only* have been written if appropriated from 3Lions) are false, as demonstrated by Juniper's citation to pre-existing, third-party publications and Plaintiff's own assertion that it could independently author lines identical to pre-existing works.  FACT ¶ 20 improperly assumes copying and improperly extends the scope of this suit to derivative works expressly carved out by Plaintiff.  *See, e.g.,* Kagan Decl. ¶ 9, Exh. H, [Dkt. 50].  Juniper provides these examples to make clear that the portion of Plaintiff's Motion entitled "Undisputed Facts" is largely comprised of items that are neither undisputed nor facts.

## ARGUMENT

### I.   Standard for Summary Judgment.

The parties agree that summary judgment is appropriate in this case because "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact." *Abel v. Southern Shuttle Servs.*, 631 F.3d 1210, 1211 n.1 (11th Cir. 2011) (quoting Fed. R. Civ. P. 56(c)). "When the moving party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it *must support its motion with credible evidence* . . . that would entitle it to a directed verdict if not controverted at trial." *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (citations omitted).

As set forth below, Plaintiff has not met its burden.  Plaintiff has failed to demonstrate access to its allegedly infringed Work and substantial similarity between the protectable elements of that Work and Juniper's White Paper; Plaintiff has equally failed to demonstrate the knowledge of infringement or intentional inducement required for contributory infringement.  Plaintiff has also failed to present any evidence of the willfulness required for contributory infringement and heightened statutory damages.

### II.   Plaintiff's Motion for Summary Judgment as to Copyright Infringement Fails as a Matter of Law.

"To establish copyright infringement," a plaintiff must prove:  "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  For the purposes of this Opposition, Juniper assumes Plaintiff has a copyright in the Work.  Nevertheless,

Plaintiff's Motion fails because Plaintiff cannot prove any of three necessary requirements for a copyright violation:  (1) factual copying of Plaintiff's Work by the defendant; (2) which is so extensive that it rendered the two works substantially similar; and (3) that exceeds the bounds of fair use.  As the Eleventh Circuit has explained:

> To prove actionable copying, the plaintiff must first establish, as a factual matter, that the alleged infringer "actually used the copyrighted material to create his own work."  Proof of copying may be shown either by direct evidence of the copying or, in the absence of such evidence, "copying as a factual matter typically may be inferred from proof of access to the copyrighted work and 'probative similarity.'"  Factual proof of copying, however, is only an element in satisfying the second prong of *Feist*.
>
> It is at this point that the plaintiff must also respond to any proof advanced by the defendant that the portion of the copyrighted work actually taken does not satisfy the constitutional requirement of originality . . .  If the plaintiff successfully demonstrates that the portion of the copyrighted work taken satisfies the originality requirement, he must still, depending upon the proof of the defendant and the defenses asserted, surmount two additional hurdles.  First, the plaintiff must prove that "the copying of copyrighted material was so extensive that it rendered the offending and copyrighted works substantially similar."  Second, he may have to successfully challenge the putative infringer's evidentiary assertion that the use made of the original portion of the copyrighted work is a fair use under 17 U.S.C. § 107, where the putative infringer attempts to carry his burden and demonstrate a right to such use.

*Bateman v. Mnemonics, Inc*., 79 F.3d 1532, 154–42 (11th Cir. 1996) (citations omitted).

In *Bateman*, the Eleventh Circuit ruled against the plaintiff's claim of infringement based on the same decision tree that govern this Motion—first confronting the copyright doctrine of *factual copying*; second, of *substantial similarity*; and third, of *fair use*.  The first two constitute elements of the *prima facie* case, elements over which Plaintiff bears the burden of proof.  These are discussed in sections II.A and II.B below.  The affirmative defense of fair use is addressed in Juniper's own Motion for Summary Judgment.  [Dkt. 49].

MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### A.      Plaintiff cannot establish factual copying.

*Bateman* instructs that a plaintiff must first establish that the defendant actually copied its work, which is shown either by evidence of direct copying or by circumstantial evidence.  Evidence of direct copying is exceedingly rare, and is not present in this case.  *See Dream Custom Homes, Inc. v. Modern Day Constr. Inc.*, 476 Fed. Appx. 190, 192 (11th Cir. 2012); *Baby Buddies, Inc. v. Toys R Us, Inc.*, 611 F.3d 1308, 1315 (11th Cir. 2010).  Plaintiff has not adduced testimony, photographs, or other direct evidence that Juniper employees actually copied from its website.  Plaintiff must, therefore, present circumstantial evidence of copying, which requires it to demonstrate both access and "probative similarity."  *Bateman*, 79 F.3d at 1541.  Plaintiff can establish neither.

"[C]opying as a factual matter typically may be inferred from proof of access to the copyrighted work and 'probative similarity.'"  *Id*.  It is important to focus on ***who*** must have access to the copyrighted work.  As the Eleventh Circuit has explained, "[t]o demonstrate copying, a plaintiff must show that the person who composed the defendant's work had access to the copyrighted material[.]"  *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1253 (11th Cir. 2007) (internal quotation marks omitted).

Plaintiff cannot present undisputed facts demonstrating access ***by the party who prepared*** the work in suit—in this case a company called R3.  Plaintiff tries to meet its burden by showing that a Juniper-registered IP address logged onto Plaintiff's website on three occasions before the White Paper was published.  3Lions MSJ at 7, 16.[1]  The problem with this evidence is that ***Juniper is not the author of the allegedly infringing***

---

[1] Plaintiff further highlights 15 times *after* the White Paper's publication that the Work was similarly accessed, though the import of this is not clear.  *Id*. at 7.

MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

*work*—and Plaintiff has presented no evidence that the author, R3, knew about or accessed the Work.  Kagan Supp. Decl. ¶ 2, Exh. A.

Plaintiff's failure to prove access to its website by the company that authored the White Paper mandates the denial of its Motion.  The mere existence of a website does not demonstrate access.  "Without evidence that [the authoring party] actually visited the website on which Plaintiff's designs were posted, there is no reasonable possibility of access."  *Bldg. Graphics, Inc. v. Lennar Corp.*, 866 F. Supp. 2d 530, 539 (W.D.N.C. 2011), *aff'd*, 708 F.3d 573 (4th Cir. 2013).  Plaintiff has not presented *any* evidence demonstrating that R3 had access to its site.

Even had Plaintiff presented evidence that R3 accessed its website, that evidence still would not warrant summary judgment *in its favor*.  Such a showing is only sufficient to *defeat* summary judgment *against* it.  "[C]opying as a factual matter typically *may be inferred* from proof of access to the copyrighted work and 'probative similarity.'"  *Bateman*, 79 F.3d at 1542 (emphasis added).  The inference is not mandatory.  In this case, Juniper denies that factual copying took place.  *See* Answer ¶¶ 13, 22–23, 29, 32 [Dkt. 12]; Coonan Decl. ¶¶ 2–3.  Under such circumstances, "a factual issue arises, which it is for trial to resolve."  *Clonus Assocs. v. DreamWorks, LLC*, 457 F. Supp. 2d 432, 440 (S.D.N.Y. 2006).

**B.      Plaintiff cannot establish legal copying—*i.e.* improper appropriation.**

Separate from the foregoing matter of factual copying is the distinct inquiry into *legal copying*, also referred to as *substantial similarity* or *improper appropriation*.  The governing standard here is:

MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

3441917

> To determine whether an allegedly infringing work is substantially similar to a copyrighted work, we ask whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.

*Baby Buddies*, 611 F.3d at 1315 (internal quotation marks omitted).  "[C]opyright protection extends only to the original elements of expression in a work:  The mere fact that a work is copyrighted does not mean that every element of the work may be protected."  *Id*. at 1316.  In other words, even were the evidence to show copying as a factual matter, no liability arises unless the materials copied are themselves sufficiently original to create an actionable right against copying and were copied in substantial amounts.  *See Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 101–02 (2d Cir. 2014) (copying from plaintiff's copyrighted work only "unprotected elements" not "wrongful").

### 1. Plaintiff cannot demonstrate copyright protection over previously published phrases.

Plaintiff's Motion relies entirely on a list of similarities between the two works, both of which describe the same act of Congress.  3Lions MSJ at 10–13.  As Plaintiff cannot premise suit on copying of materials that are unoriginal to it, the Court must determine which aspects of Plaintiff's claim depend on materials authored by others.

The following table illustrates that significant components of the Work predate its publication date of February 1, 2010:[2]

| Plaintiff's Work | Previous Works | Source |
|---|---|---|
| THE HITECH ACT | The HITECH Act | HHS Website, http://www.hhs.gov/ ocr/privacy/hipaa/ |
| The Health Information Technology for Economic | The Health Information Technology for Economic | |

---

[2] A true and correct copy of each previous work is referenced in Kagan Decl. ¶¶ 11–13, Exhs. J–L; Kagan Supp. Decl. ¶¶ 3–5, Exhs. B–D.

MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

3441917

| | | |
|---|---|---|
| and Clinical Health Act (HITECH Act or 'The Act') is part of the American Recovery and Reinvestment Act of 2009 (ARRA). | and Clinical Health (HITECH) Act, enacted as part of the American Recovery and Reinvestment Act of 2009 (ARRA)[.] | administrative/ enforcementrule/hitechenforc ementifr.html (latest November 2009) |
| [T]he Act provides individuals with a right to obtain their PHI in an electronic format[.] | The HITECH Act now provides individuals with a right to obtain their PHI in electronic format . . . | UCSD Bulletin, http://healthsciences.ucsd.ed u/compliance/privacy/ Documents/BULLETIN0- Privacy%20Bulletin- Summary%20of%20the%20 HITECH_Privacy%20 Provisions-Apr09.doc, (April 2009) |
| Civil penalties for willful neglect are increased under the HITECH Act. These penalties can extend up to $250,000, with repeat/uncorrected violations extending up to $1.5 million. | [Civil] penalties for a single violation can total $250,000, with a maximum of $1.5 million for repeated or uncorrected violations. | Loeb & Loeb LLP, http://www.loeb.com/articles -articles-20100120- hitechactof2009certifiedelect ronichealthrecordscertificatio nrequirementsandfinancialin centivesandpenaltiespertainin gtoeligibleproviders, (January 2010) |
| The HITECH Act now imposes data breach notification requirements for unauthorized uses and disclosures of "unsecured PHI." | [The HITECH Act] require[s] covered entities under the Health Insurance Portability and Accountability Act of 1996 (HIPPA) and their business associates to provide notification in the case of breaches of unsecured protected health information. | Federal Register http://www.gpo.gov/fdsys/pk g/FR-2009-08-24/pdf/E9- 20169.pdf, (August 24, 2009) |
| In general, the Act requires that patients be notified of any unsecured breach.  If a breach impacts 500 patients or more then HHS must also be notified. | [H]owever, if the breach involves the protected health information of at least 500 individuals, the covered entity must notify HHS at the same time that it notifies the affected individuals. | Rivkin Radler LLP, http://www.rivkinradler.com/ assets/pubs/downloads/Chori atis-NewHIPAARegs9- 09.pdf, (September 2009) |

MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff may not assert any right to exclusive use of, or ownership over, the above phrases, which collectively constitute the majority (103 of 176 words) of material Plaintiff claims Juniper copied verbatim from the Work.

### 2.   Plaintiff cannot establish substantial similarity as to the remaining materials.

Having eliminated the bulk of Plaintiff's verbatim copying allegations, the next step is to determine whether Plaintiff has demonstrated substantial similarity in its remaining lines—*i.e.* those not existing in pre-existent, third-party works.  Here Plaintiff has an option:  It can attempt to establish *comprehensive nonliteral similarity*, which exists when "the fundamental essence or structure of one work is duplicated in another," *Bateman*, 79 F.3d at 1543 n.25, or *fragmented literal similarity,* which applies when the crucial elements of a copyrighted work are copied, *Palmer v. Braun*,  287 F.3d 1325, 1330 (11th Cir. 2002).  Given that Plaintiff's work contains over 100,000 words, and it has only claimed copying of several hundred words, Plaintiff's potential claim must be based on a theory of fragmented literal similarity.  *See* 3Lions MSJ at 10–13.

Under a theory of fragmented literal similarity, "a work may copy only a small part of the copyrighted work but do so word-for-word[; i]f this fragmented copy is important to the copyrighted work, and of sufficient quantity, then it may support a finding of substantial similarity."  *Palmer*, 287 F.3d at 1330.  In *Palmer*, the plaintiff compiled long lists of materials common to its and defendant's works, including the "damning similarity" of fifteen identical phrases.  *Id*. at 1331–32.  However, even though "a layman might conclude that [defendant's] Course was appropriated from [plaintiff's] Course," the court denied liability.  *Id*. at 1334.  The Eleventh Circuit concluded that the

overlaps in expression, relative to the size of the work and due to the nature of the subject copied, were insufficient for a finding of fragmented literal similarity.  *See id.*  Small amounts of verbatim copying are insufficient to prove substantial similarity.

Plaintiff's original elements—compiling facts and describing the explicit provisions of a federal statute—receive at most "thin" copyright protection.  *See Warren Publ'g v. Microdos Data Corp.*, 115 F.3d 1509, 1524 (11th Cir. 1997).  Even a cursory comparison between Plaintiff's and Juniper's works reveals vast differences between the expression Plaintiff employs and the wording in the White Paper—differences which fail to infringe on Plaintiff's "thin" protection:

| Plaintiff's Work | Juniper's White Paper |
| --- | --- |
| ARRA contains incentives related to health care information technology in general (e.g. creation of a national health care infrastructure) and contains specific incentives designed to accelerate the adoption of electronic health record (EHR) systems among providers.[3]  In the case where a provider has implemented an EHR system . . . | The HITECH Act is intended to encourage more effective and efficient healthcare through the use of technology, thereby reducing the total cost for all Americans and enabling greater access to the system. |
| Under the HITECH Act, business associates are now directly "on the compliance hook" since they are required to comply with the safeguards contained in the HIPAA Security Rule (SR).[4]  Under HITECH, mandatory penalties will be imposed for "willful neglect."  Obviously what "willful neglect" means will be determined on a case-by-case basis, but speaking in the parlance of this guide, we believe that a provider with "no story" regarding compliance (or so minimal a | Business associates are also required to comply with HIPAA's Security Rule, expanding the scope of the issue even further.  The HITECH Act contains mandatory penalties for "willful neglect."  Although enforcement will vary case by case, it is likely that providers without a compelling reason for noncompliance could be |

---

[3] Plaintiff lists these sentences together, however, the sentence starting "In the case" occurs *10 paragraphs later* in Plaintiff's Work, within an entirely different section.

[4] The second sentence ("Under HITECH, mandatory penalties . . .") is found *9 paragraphs above* the preceding sentence and within an entirely different section.

MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

3441917

| | |
|---|---|
| story as to portray a cavalier attitude towards compliance) will likely be at significant risk[.] | at risk. |
| Notification of Breach<br><br>These[5] notification requirements are similar to many state data breach laws related to personally identifiable financial information (e.g. banking and credit card data).  In general, the Act requires that patients be notified of any unsecured breach.  If a breach impacts 500 patients or more then HHS must also be notified.  Notification will trigger posting the breaching entity's name on HHS' website.  Under certain conditions local media will also need to be notified. | The Cost of an Unsecured Breach<br><br>Disclosure requirements are similar to those imposed by states related to financial information, in that they require that patients be notified of any unsecured breach.  If a breach impacts 500+ patients, then Health and Human Services must be notified; certain conditions may also trigger notification of local media. |
| Because under the HITECH Act there are significant taxpayer dollars appropriated in the form of incentive funding that directly target a provider's adoption of an EHR system.  Regulators, patients and other stakeholders are certain to demand more transparency and accountability. | The significant amount of taxpayer dollars involved in the Act is almost certain to force more transparency and accountability. |

Plaintiff's own selections set forth above are not substantially similar to the White

Paper.  After excluding the above dissimilar text, only two sentences remain in Plaintiff's

claim.[6]  Two minor sentences from a voluminous Work cannot support a finding of

*substantial* similarity.  As the Eleventh Circuit explained, when "the amount of material

---

[5] Plaintiff lists this paragraph as being right below the heading "Notification of Breach."  However, it is found two sentences down in Plaintiff's Work.

[6] The remaining two sentences are:

1. Any provider expecting to participate in the HITECH Act's incentives should be prepared to deliver on these requests or risk a finding that their use does not qualify as "meaningful use."

2. Because this legislation anticipates a massive expansion in the exchange of electronic protected health information (ePHI), the HITECH Act also widens the scope of privacy and security protections available under HIPAA; it increases the potential legal liability for non-compliance; and it provides for more enforcement.

copied [is] *de minimis*, [it] will not justify a finding of substantial similarity." *MiTek Holdings v. Arce Eng'g Co.*, 89 F.3d 1548, 1560 (11th Cir. 1996). "Even in the rare case of a plaintiff with direct evidence that a defendant attempted to appropriate his original expression, there is no infringement unless the defendant succeeded [in copying] to a meaningful degree." *Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1214 (11th Cir. 2000) (citations omitted); *see also Lil' Joe Wein Music, Inc. v. Jackson*, 245 Fed. Appx. 873, 875, 880 (11th Cir. Fla. 2007) (denying similarity despite literal copying of central line).

This binding Eleventh Circuit precedent is consistent with precedent from other courts. The Supreme Court and courts across the country have held that minimal or fragmented verbatim copying cannot support a finding of substantial similarity in large works. *See Feist*, 499 U.S. at 344 (denying substantial similarity despite four fictional— *i.e.* original—listings copied by defendant); *Schoolhouse, Inc. v. Anderson*, 275 F.3d 726, 729 (8th Cir 2002) (holding fragmented copying of plaintiff's listings insufficient for substantial similarity); *Key Publ'ns, Inc. v. Chinatown Today Publ'g Enters., Inc.*, 945 F.2d 509 (2d Cir.1991) (same); *Cincinnati Microwave, Inc. v. Larrick's Inc.*, Case No. 83 C 3352, 1983 U.S. Dist. LEXIS 14772, at *8–9 (N.D. Ill. Aug. 9, 1983) (finding success unlikely on issue of substantial similarity where plaintiff identified thirteen passages— each four to eleven lines long—copied in defendant's work); *Jackson v. Wash. Monthly Co.,* 206 U.S.P.Q. 92, 94 (D.D.C. 1979) (finding no substantial similarity despite verbatim copying of two lines in larger work), *aff'd*, 675 F.2d 1340 (D.C. Cir. 1982).

Plaintiff does not come close to overcoming the *de minimis* requirement. Plaintiff's residual *two sentences* amount to *one-thirteenth of one percent* of Plaintiff's

---

MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

work.  As was ruled in the above-cited cases, two lines cannot rise to the level of improper appropriation.  Accordingly, Plaintiff's *prima facie* case fails.

## III.  Disentangling Sequence of Rival Publications.

Plaintiff's position is that, even though portions of the Work may be identical to prior publications, Plaintiff can assert copyright protection in its own original expression. In other words, Plaintiff attempts to dismiss the overlap between prior publications and the snippets on which it bases suit as irrelevant.  However, if any of Plaintiff's arguments protect Plaintiff's claims from loss of protection by virtue of prior publications, then they must similarly immunize Juniper from Plaintiff's claims of infringement.  There have been many publications—both before and after publication of the Work—that describe the HITECH Act.  The description of the Act in each must necessarily be similar and that similarity does not make any party liable to another.

### A.  Various entities published the material in question before the Work became accessible.

For purposes of this Opposition, the first publication date for the Work is February 1, 2010.  Compl., Exh. A [Dkt. 1-1]; Stipulation ¶ 1.  As demonstrated below, much of the material Plaintiff seeks to protect was published by others well before this date.  In April 2009, the University of California, San Diego issued a bulletin on the HITECH Act.  Kagan Decl. ¶ 13, Exh. L.  On November 3, 2009, HHS uploaded a document entitled *Hitech Act Enforcement Interim Final Rule*.  *Id*. at ¶ 12, Exh. K.  In these—and the other publications cited in section II.B.1—the third-party materials were publicly available on the Internet before the Work's first publication on February 1, 2010. To focus on just one instance of a prior publication, the sequence of how materials were

---

13

uploaded by UCSD and the parties to this suit (placing in bold type the comparable extracts) is as follows (from left to right):

| *UCSD Website* | *Plaintiff's Work* | *Juniper's White Paper* |
|---|---|---|
| **The HITECH Act now provides individuals with a right to obtain their PHI in electronic format** and also permits the individual to designate another person or entity to be the recipient of the E-PHI without a separate authorization. | In the case where a provider has implemented an EHR system, **the Act provides individuals with a right to obtain their PHI in an electronic format** (i.e. ePHI). | **The Act also provides individuals with a right to obtain their PHI in electronic format**. |

The three texts are distinguished by only minor differences; the White Paper is at least as similar to the pre-existing UCSD material as it is to the Work.

> **B.     The same inferences on which Plaintiff relies undercut any argument against the previous materials' preclusive effect on Plaintiff's claim.**

"[I]f by some magic a man who had never known it were to compose anew Keats' Ode On a Grecian Urn, he would be an 'author,' and, if he copyrighted it, others might not copy that poem, though they might of course copy Keats." *Sheldon v. Metro-Goldwyn Pictures Corp*., 81 F.2d 49, 54 (2d Cir. 1936) , *aff'd*, 309 U.S. 390 (1940). Plaintiff would like to pretend, based on Judge Learned Hand's observation, that Plaintiff enjoys untrammeled protection over the material in its Work regardless of its virtual identicality to texts from earlier third-party works.   That position cannot stand.

As Judge Hand recognized, only "magic" could underlie his hypothetical:  In the real world, there is no chance that someone unfamiliar with Keats would begin a poem: "Thou still unravish'd bride of quietness!/Thou foster-child of silence and slow time" and subsequently continue to author an expression word-for-word identical to the *Ode*. Nevertheless, there is room for simple uncopied texts to be identical.  Thus, two unrelated

individuals may each write, "The Health Information Technology for Economic and Clinical Health Act is part of the American Recovery and Reinvestment Act of 2009." Plaintiff cannot claim it independently authored lines identical to pre-existing sources and simultaneously deny the possibility that R3 may have done the same.

At bar, there is no direct evidence that R3 copied from Plaintiff, so Plaintiff is attempting to rely on circumstantial evidence from which factual copying may be presumed—access plus probative similarity. *See supra*, section II.A. But what is good for the goose is good for the gander—the presumptions on which Plaintiff's Motion is premised equally demonstrate that Plaintiff itself copied from prior sources. *See Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 489 F. Supp. 174, 179 (N.D. Ga. 1980), *aff'd*, 684 F.2d 821 (11th Cir. 1982) ("[U]pon proof by the defendant of the plaintiff's access to similar prior works, the burden of proving originality shifts back to the plaintiff."); *North Coast Indus. v. Jason Maxwell, Inc*., 972 F.2d 1031, 1034 (9th Cir. 1992)  ("[P]roof that the plaintiff copied from prior works should involve the same elements . . . as are required to establish copying by the defendant from the plaintiff, *i.e.*, access and similarity.") (citations omitted).  Plaintiff's inference that the White Paper copied the snippets portrayed in the chart above from the Work necessitates the identical inference that Plaintiff copied those same aspects of its Work from the pre-existing sites. Plaintiff cannot prove the essential element of originality as to the words in question when those same words appear in previous sources to which it had access; being thus unable to prove the second *Feist* element ("copying of constituent elements of the work ***that are original***"), Plaintiff's copyright infringement claim fails.

In addition, there is a separate flaw that defeats the current Motion. Assuming Plaintiff independently created the words "the Act provides individuals with a right to obtain their PHI in an electronic format" without reference to the antecedent UCSD website, it follows that no inference of copying from Plaintiff is warranted from the White Paper's inclusion of almost the same words. Absent existence of the UCSD website, Plaintiff could argue that the confluence of access and probative similarity warrants an inference of factual copying. But, once recognizing the existence of the UCSD website, that inference vanishes. With UCSD, the possibilities are at least two-fold—R3 may have copied the Work *or* UCSD's language.[7] The existence of two potential sources for the same material means Plaintiff can *at most* demonstrate a 50 percent chance—*i.e.* less than a preponderance—that factual copying occurred from its own Work and therefore cannot meet its burden of proof. *See Mag Jewelry Co., Inc. v. Cherokee, Inc*., 496 F.3d 108, 116 (1st Cir. 2007) (denying liability despite access and virtual identicality, as copying could have been from a third-party).

There is also a *third* possibility. Plaintiff claims it independently authored a line essentially identical to a previous work; it is equally likely that R3 did the same. R3 may have copied from neither Plaintiff nor UCSD but simply alighted on the same pedestrian formulation in describing a recent enactment. Plaintiff's proof of factual copying therefore further plummets to 33 percent, far below the quantum needed to prevail on its Motion.

---

[7] A close comparison shows it is more likely that R3 derived its text from UCSD than from the Work. Both UCSD's work and the White Paper (a) begin the sentence with what the Act provides; (b) omit the parenthetical reference to "ePhi"; and (c) reference "in electronic format," as opposed to "in *an* electronic format."

MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**IV.     Plaintiff cannot prove contributory infringement.**

Plaintiff concedes that to prove contributory infringement it must show:  "(1) Juniper's Partners directly infringed on the Work; (2) Juniper 'induc[ed] or encourag[ed]' such direct infringement; and (3) Juniper '[p]rofit[ed] from [the] direct infringement.'" 3Lions MSJ at 4 (citations omitted); *Id.* at 16–17.  Plaintiff fails to establish any of its self-identified elements.

**A.     Plaintiff cannot assert contributory infringement when it has failed to demonstrate direct infringement.**

There can be no contributory infringement without direct infringement. Contributory infringement is defined as "with knowledge of the infringing activity, induc[ing], caus[ing] or materially contribut[ing] to the infringing conduct of another." *Cable/Home Commc'n Corp. v Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990). "Contributory infringement necessarily must follow a finding of direct[] infringement." *Id.*

For the reasons discussed, Plaintiff cannot prove direct infringement; it, therefore, cannot prove contributory infringement.

**B.     Plaintiff cannot demonstrate Defendant induced or encouraged any infringement.**

Even if there were evidence of direct infringement, Plaintiff's claim of contributory infringement must fail because Plaintiff has not presented any evidence that Juniper "induced or encouraged" anyone to make a copy of the White Paper.  Rather, Plaintiff only presents its own statement and unsubstantiated belief:  "[B]y intentionally uploading a copy of the Infringing Whitepaper onto its website, Juniper clearly 'induced and encouraged' said direct infringement on the part of its Partners (i.e. third parties)."

3Lions MSJ at 17.  "Intentionally uploading" to its own website is not akin to inducing or encouraging others to make copies.  Indeed, the only case Plaintiff cites to support this implication, *Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 648 (S.D.N.Y. 2013), is not on point.  ReDigi contributorily infringed by operating a website whose sole purpose was for third-parties to upload and sell digital music recordings—in direct violation of copyright laws.  *Id.* at 659 ("[P]ut simply, ReDigi, by virtue of its design, is incapable of compliance with the law . . .").  In contrast, the Juniper web site is not designed to distribute copyright-protected materials.  Thus, one cannot infer from the fact that Juniper posted materials to its website that it intended for others to download and distribute copyrighted materials.  Plaintiff simply has not, and cannot, establish knowledge of or intent to induce or encourage infringement.

### C.  Plaintiff cannot demonstrate Defendant profited from any alleged infringement.

Plaintiff acknowledges it must establish that Defendant profited from the alleged contributory infringement, but presents no evidence to demonstrate profit.  Instead, Plaintiff avers, "it is clear that Juniper, a commercial enterprise, profits from providing this kind of convenient access to its marketing collateral to its business Partners who then use said collateral to help sell Juniper's products."  3Lions MSJ at 17 (citing "FACTS" ¶¶ 7–11).  This is untrue.  Marketing materials not directly commercialized may be noncommercial in nature.  *See Bollea v. Gawker Media, LLC,* 913 F. Supp. 2d 1325, 1328 (M.D. Fla. 2012).  Plaintiff fails to establish Juniper profited from its White Paper.

**V.      Plaintiff cannot prove willful infringement.**

To establish a claim for willful infringement a plaintiff must establish that the defendant acted "despite an objectively high likelihood that its actions constituted infringement" and "demonstrate [knowledge of] this objectively-defined risk[.]"  *Olem Shoe Corp. v. Wash. Shoe Corp.*, 591 Fed. Appx. 873, 877–88 (11th Cir. 2015); *Cable/Home Commc'n*, 902 F.2d 829 (requiring actual knowledge of copyright). Knowledge of Plaintiff's Work—let alone failing to affirmatively search for potential copyright infringement—does not raise infringement to the level of willfulness.  *See Clever Covers v. Southwest Fla. Storm Def., LLC*, 554 F. Supp. 2d 1303, 1310 (M.D. Fla. 2007).  There are three levels of infringement: willful, knowing and innocent.  *See id*. Willful infringement requires proof of knowledge and "deliberately ignor[ing] this knowledge"—something more than knowing or innocent infringement.  *See Nick-O-Val Music, Co. v. P.O.S. Radio, Inc.*, 656 F. Supp. 826, 829 (M.D. Fla. 1987).

Were Juniper's White Paper to infringe Plaintiff's Work, it would have been without Juniper's knowledge or consent.  Juniper commissioned, but did not write, the accused White Paper.  In that capacity, Juniper cannot be liable for willful infringement unless Plaintiff can present evidence that Juniper was aware of facts suggesting the alleged infringement—something it has pointedly failed to do.  Plaintiff's assertion that "[t]he record is also undisputable regarding the fact that Juniper's misappropriation of 3Lions' rights in the Work was intentional, inherent, and an overt part of its business model" does not constitute an "undisputable" "record."  3Lions MSJ at 18.  Plaintiff did not take any discovery from the third-party contractor who wrote the White Paper; it therefore cannot logically possess any evidence demonstrating willfulness.

**VI.**     **Plaintiff is not entitled to enhanced statutory damages.**

Awards of enhanced statutory damages are limited only to situations in which "infringement was committed willfully."  17 U.S.C. § 504(c)(2).  Plaintiff has woefully failed to establish infringement—let alone willful infringement—and cannot claim an enhanced damages award.

**VII.**     **Conclusion**

For the reasons articulated above and in Juniper's Motion for Summary Judgment, Juniper respectfully requests that this Court deny Plaintiff's Motion for Summary Judgment and further requests final disposition of Plaintiff's claims in Juniper's favor.

Date: July 9, 2015                              Respectfully submitted,


                                                /s/ David Nimmer
                                                DAVID NIMMER
                                                Admitted *Pro Hac Vice*
                                                IRELL & MANELLA LLP
                                                1800 Avenue of the Stars, Suite 900
                                                Los Angeles, CA 90067
                                                Telephone: (310) 277-1010
                                                Fax: (310) 203-7199
                                                E-mail: dnimmer@irell.com

                                                *Attorney for Defendant Juniper Networks, Inc.*

MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

3441917

## <u>CERTIFICATE OF SERVICE</u>

**WE HEREBY CERTIFY** that on July 9, 2015, a true and correct copy of

Juniper Networks, Inc.'s Memorandum of Law in Opposition to Plaintiff's Motion for

Summary Judgment was served electronically on counsel of record for the Plaintiff.

/s/ David Nimmer
DAVID NIMMER
Admitted *Pro Hac Vice*

*Attorney for Defendant Juniper Networks, Inc.*

3441917